# UNITED STATES DISTRICT COURT

for the

*MIDDLE* District of *TENNESSEE*

*NASHVILLE* Division

FILED

2025 JUL 17 PM 1:12

U.S. DISTRICT COURT
MIDDLE DISTRICT OF TN

_SRINIVAS ANDAY_ )
)
)
Plaintiff(s), *Pro Se* )
*(Write the full name of each plaintiff who is filing this complaint.* )
*If the names of all the plaintiffs cannot fit in the space above,* )
*please write "see attached" in the space and attach an additional* )
*page with the full list of names.)* )
-v- )
)
)
_NISSAN NORTH AMERICA, INC_ )
)
)
Defendant(s) )
*(Write the full name of each defendant who is being sued. If the* )
*names of all the defendants cannot fit in the space above, please* )
*write "see attached" in the space and attach an additional page* )
*with the full list of names.)* )

Case No. _____

*(to be filled in by the Clerk's Office)*

Jury Trial: *(check one)* ☐ Yes ☒ No

## COMPLAINT FOR EMPLOYMENT DISCRIMINATION

### I. The Parties to This Complaint

#### A. The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | SRINIVAS ANDAY |
| Street Address | 355 DELTA CR |
| City and County | BILLINGS |
| State and Zip Code | MT - 59102 |
| Telephone Number | (615) 482 4106 |
| E-mail Address | SRINUANDAY1@YAHOO.COM |

#### B. The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title *(if known)*. Attach additional pages if needed.

Defendant No. 1

    Name                        *NISSAN NORTH AMERICA, INC*

    Job or Title *(if known)*    *CORPORATE EMPLOYER*

    Street Address            *1 NISSAN WAY*

    City and County         *FRANKLIN*

    State and Zip Code     *TN — 37067*

    Telephone Number     *(615) 725 1000*

    E-mail Address *(if known)*

Defendant No. 2

    Name

    Job or Title *(if known)*

    Street Address

    City and County

    State and Zip Code

    Telephone Number

    E-mail Address *(if known)*

Defendant No. 3

    Name

    Job or Title *(if known)*

    Street Address

    City and County

    State and Zip Code

    Telephone Number

    E-mail Address *(if known)*

Defendant No. 4

    Name

    Job or Title *(if known)*

    Street Address

    City and County

    State and Zip Code

    Telephone Number

    E-mail Address *(if known)*

**C.  Place of Employment**

The address at which I sought employment or was employed by the defendant(s) is

Name                  *NISSAN NORTH AMERICA, INC*
Street Address        *1 NISSAN WAY*
City and County       *FRANKLIN*
State and Zip Code    *TN – 37067*
Telephone Number      *(615) 725 1000*

**II.  Basis for Jurisdiction**

This action is brought for discrimination in employment pursuant to *(check all that apply)*:

☐   Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (race, color, gender, religion, national origin).

*(Note: In order to bring suit in federal district court under Title VII, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☐   Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 to 634.

*(Note: In order to bring suit in federal district court under the Age Discrimination in Employment Act, you must first file a charge with the Equal Employment Opportunity Commission.)*

☐   Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 to 12117.

*(Note: In order to bring suit in federal district court under the Americans with Disabilities Act, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☑   Other federal law *(specify the federal law)*:  *18 USC §§ 1341 ¢ 1343, 49 USC § 32710, 26 USC §§ 6051 ¢ 7434, 42 U.S.C. §§ 1981 and 1981A, 18 USC § 1514A*

☑   Relevant state law *(specify, if known)*:  *TENNESSEE COMMON-LAW BREACH OF CONTRACT*

☑   Relevant city or county law *(specify, if known)*:

III.   **Statement of Claim** *PRO SE COMPLAINT ATTACHED*

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

A.   The discriminatory conduct of which I complain in this action includes *(check all that apply)*:

- [ ] Failure to hire me.
- [x] Termination of my employment.
- [x] Failure to promote me.
- [ ] Failure to accommodate my disability.
- [x] Unequal terms and conditions of my employment.
- [x] Retaliation.
- [ ] Other acts *(specify):* _____

   *(Note: Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court under the federal employment discrimination statutes.)*

B.   It is my best recollection that the alleged discriminatory acts occurred on date(s)

   *OCTOBER 1, 2019*

C.   I believe that defendant(s) *(check one)*:

- [x] is/are still committing these acts against me.
- [ ] is/are not still committing these acts against me.

D.   Defendant(s) discriminated against me based on my *(check all that apply and explain)*:

- [x] race _____
- [x] color _____
- [ ] gender/sex _____
- [ ] religion _____
- [x] national origin _____
- [ ] age *(year of birth)* _____ *(only when asserting a claim of age discrimination.)*
- [ ] disability or perceived disability *(specify disability)*

   _____

E.   The facts of my case are as follows. Attach additional pages if needed.

*PRO SE COMPLAINT ATTACHED*

*(Note: As additional support for the facts of your claim, you may attach to this complaint a copy of your charge filed with the Equal Employment Opportunity Commission, or the charge filed with the relevant state or city human rights division.)*

## IV. Exhaustion of Federal Administrative Remedies

A. It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission or my Equal Employment Opportunity counselor regarding the defendant's alleged discriminatory conduct on *(date)*

*N/A*

B. The Equal Employment Opportunity Commission *(check one)*:

☐ has not issued a Notice of Right to Sue letter.

☐ issued a Notice of Right to Sue letter, which I received on *(date)* _____.

*(Note: Attach a copy of the Notice of Right to Sue letter from the Equal Employment Opportunity Commission to this complaint.)*

C. Only litigants alleging age discrimination must answer this question.

Since filing my charge of age discrimination with the Equal Employment Opportunity Commission regarding the defendant's alleged discriminatory conduct *(check one)*:

☐ 60 days or more have elapsed.

☐ less than 60 days have elapsed.

## V. Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

*SEE ATTACHED COMPLAINT*

## VI. Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A. For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: 7/17/25

Signature of Plaintiff

Printed Name of Plaintiff SRINIVAS ANDAY

### B. For Attorneys

Date of signing: N/A

Signature of Attorney

Printed Name of Attorney

Bar Number

Name of Law Firm

Street Address

State and Zip Code

Telephone Number

E-mail Address

IN THE UNITED STATES DISTRICT COURT.

FOR THE MIDDLE DISTRICT OF TENNESSEE

AT NASHVILLE

| | | |
|---|---|---|
| SRINIVAS ("SRINU") ANDAY, | ) | |
|    Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. _____ |
| | ) | |
| NISSAN NORTH AMERICA, INC., | ) | |
| | ) | |
|    Defendant. | ) | |

COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND MONETARY RELIEF

Plaintiff Srinivas ("Srinu") Anday ("Plaintiff") brings this action Pro Se against
Nissan North America, Inc. ("Nissan" or "Defendant") for violations of federal
civil-rights, whistle-blower, tax laws and for breach of contract under Tennessee
state law.

PRELIMINARY STATEMENT

1. Plaintiff brings this cause based upon several different claims for Declaration relief,
Injunction relief, money damages and other equitable relief. He asserts claim for breach of
contract under state law, for federal civil rights for employment discrimination based upon

1

his race and ethnicity, for continuing harassment after wrongful termination of his employment, and for retaliation for his reporting consumer warranty fraud practices to Nissan upper management.

2. Plaintiff anticipates that Defendant may attempt to invoke equitable, judicial, or promissory estoppel as a defense. Plaintiff pleads that any such defenses should fail due to Nissan's unclean hands, coercion, continued retaliation, concealment of evidence, and inducement of Plaintiff to act under duress and misinformation.

3. Any perceived waiver of rights was not voluntary or informed, but made under pressure, in fear of retaliation, and without material facts. Nissan continued to retaliate even after termination (e.g., false W-2s, POA requests, odometer tampering), which rebuts any estoppel based on finality or closure. Estoppel doctrines should not bar claims involving public safety, employment discrimination, ERISA violations, and whistleblower retaliation.

4. Plaintiff reserves the right to challenge the applicability of any estoppel defenses at the appropriate procedural stage.

## JURISDICTION AND VENUE

5. This Court has jurisdiction under 28 U.S.C. § 1331 (federal-question jurisdiction).

6. This Court has jurisdiction under 28 U.S.C. § 1343(a)(3)–(4) (civil-rights jurisdiction).

7. This Court has jurisdiction under 28 U.S.C. § 1332 (diversity jurisdiction (> $75,000)).

8. This Court has jurisdiction under 42 U.S.C. §§ 1981, 1981A, 2000e-5 (race & national-origin discrimination / damages).

9. This Court has jurisdiction under 18 U.S.C. §§ 1513, 1514A (retaliation & whistle-blower protection).

10. This Court has jurisdiction under 26 U.S.C. §§ 6051, 7434 (intentional filing of false W2 forms for 5 years).

11. This Court has jurisdiction under 49 U.S.C. § 32710 (Truth-in-Mileage Act private remedy).

12. the court has Supplemental jurisdiction 28 U.S.C. § 1367 (a) (b)

13. Venue is proper in this District under 28 U.S.C. § 1391(b)(1)–(2) because Defendant resides here and a substantial part of the events and omissions complained of occurred within the Middle District of Tennessee.


PARTIES

14. Plaintiff, Srinivas "Srinu" Anday, is a naturalized citizen of the United States, of Indian origin, and a resident of Billings, Montana. He holds a Bachelor of Science in Mechanical Engineering, a Master of Science in Industrial Engineering with a concentration in Engineering Management, and has completed nearly all coursework toward a Master of Business Administration with an emphasis in Marketing. Plaintiff also served as a non-voting member of the Board of Directors for the University of Tennessee at Knoxville.

15. During his twenty-nine (29) year tenure at Nissan North America, Inc., Plaintiff advanced from the position of Product Engineer to that of Senior Manager. He contributed to the development and training of global personnel in the Alliance New Product Quality Procedure (ANPQP), launched the first Nissan Remanufacturing programs in North America, and was selected as a Six Sigma Black Belt candidate. Plaintiff was twice awarded Nissan's highest global recognition—the "V-Pilot" Award— once by the Global Chief Executive Officer in 2009, and again in 2017 by a Senior Vice President in Japan.

16. Plaintiff was also selected for multiple elite technical training assignments in Japan, both long- and short-term, where he received advanced instruction in engine and transmission casting, assembly, and pilot-line product trials. These training sessions took place at Nissan's key production, engineering and design facilities located in Yokohama, NTC, Fuji City, and Tochigi.

17. Defendant Nissan North America, Inc. is a for-profit corporation organized under Tennessee law with its principal place of business at One Nissan Way, Franklin, Tennessee 37067. Organized for the purpose of manufacturing and marketing automobiles and trucks. At all times material to this cause, Nissan was the employer of Plaintiff Pro Se.

18.Defendant Nissan's AGENT for SERVICE OF PROCESS is Corporation Service Company (CSC) located at 15955 W. Main Street, Franklin, TN 37064.

4

## FACTS

16.     Beginning in August of 1990 the Plaintiff started working for the Defendant as an engineer.

17.     The Plaintiff worked for the Defendant for approximately eight (8) months in Smyrna, Tennessee, He was then transferred in early 1991 to Japan where he worked until April of 1993.

18. In April of 1993 the Plaintiff was transferred back to Smyrna, Tennessee where he worked until 2010. He worked as an engineer and a Section Manager. In 2010 the Plaintiff was promised a senior manager role in After-Sales organization which is located in Franklin, Tennessee. In 2010 the Plaintiff began working in Franklin, Tennessee but not in a Senior Manager role.

19.     Between 1990 and 2010 the Plaintiff also worked in Mississippi and other locations as directed with the primary locations being as set forth above.

20.     While working in Smyrna, Tennessee it became known to the Plaintiff that there were individuals in Parts Quality Engineering (PQE) who were not paying Suppliers as required due to Charles Mangrum (Director of PQE's wrong business practices. This caused concerns related to SEC violations. The Plaintiff brought this to the attention of the appropriate people to ensure that there would be no SEC violations and exposure of Nissan to extreme fines, penalties and shareholder Liabilities. After this, even though the Plaintiff had a 360 Evaluation that indicated management was happy with him and his work - the Plaintiff was not promoted to the senior manager role after being promised in writing to make the move to Nissan Headquarters at Franklin, Tennessee, to launch Remanufacturing Products (Engines/Transmissions/Electrical/Other). These promises were made by Kent Ohara Director Aftersales, and Anish Baijal HR Director and not kept.

21.     From 2010 through 2014 the Plaintiff continued to work in Franklin, Tennessee. During this time Human Resources was telling him that everything was fine but according to Kent Ohara (Director Aftersales) and Anish Baijal (HR Director) Plaintiff's promotion was a racial issue based on his race and ethnicity. Plaintiff at this time was working in Aftersales organization to launch Product Approval for Remanufactured Products. He was the only person who knew the requirements for product approval and he was being directed to sign off on products that were not fully approved. This could have created a safety issue for the ultimate consumers. When this was brought to the attention of management, Plaintiff was directed by David Bishop Plaintiff's Senior Manager to not put anything in writing on this subject.

22. In 2014 after the Plaintiff brought the safety concerns to management he was retaliated against and moved to the warranty call center in Murfreesboro, Tennessee. To be clear, the Defendant moved Plaintiff from a senior level Engineering Manager position, where he was using his technical skills in product approval, to a Call Center after he brought to the attention of Senior Manager of HR and Senior Manager New Product development that what they were doing could potentially harm the customers and increase the liability to Nissan.

23. While in the Warranty Call Center the Plaintiff learned that there was an incredible amount of fraud occurring. This included that the Defendant was illegally denying warranty claims from the consumers. These actions are similar to the class-action suit against Toyota for a sludge settlement where Toyota was illegally denying warranty claims. This was again brought to the attention of upper management (Director Warren DeBardelaben and Kristyn Lau Senior Manager) that they could not illegally deny claims

in this way. The Plaintiff was told by both Warren Debardelaben and Kristyn Lau not to put anything about this matter in writing and threatened Plaintiff's job. During this timeframe there were further acts taken to threaten the Plaintiff such as showing videos of management personnel shooting firearms and then the Plaintiff being told there was a bullet that had his name on it. This created an intense fear in the Plaintiff for his own safety and of his family, but the Plaintiff continued to work as he had no other options at the time.

24. Plaintiff asserts that these deceptive promises where motivated by racial and ethnic bias to minimize the employment benefits Plaintiff would have received through voluntary separation option.

25. In July, 2019, Plaintiff informed Senior Executives (Michelle Baron, Tracy Jones, Jeff Chambers, Carnie Colliver, Anish Baijal, Kent O'Hara, Mike Soutter, Warren Debardelaben) that Aftersales management had deceptively blocked his Voluntary Separation Package (VSP) election and other acts of race discrimination, intimidation and fraud.

26. As a result of his complaint on July 29, 2019 Plaintiff requested HR Director and certain VP's to hire an independent outside investigator to document the facts surrounding Plaintiff's complaints of employment discrimination and consumer fraud.

27. Beginning in 2019 the Defendant started offering a voluntary separation package. As the Plaintiff still had not received the senior management position that he had been promised, he started discussions about voluntarily separating under the offered buyout. He was told by Mike Soutter (VP Aftersales) and Warren Debardelaben (Director

Aftersales) not to take the voluntary separation as he was going to be promoted into a Vice President position. These promises were reported on several different occasions. Plaintiff and still not having received the promotion even though several positions were open at various locations the deadline was approaching for the voluntary separation. Plaintiff again informed Defendant he was going to take the package and voluntarily separate. On the last week that he could take the voluntary separation. Plaintiff was again promised by Director Warren Debardelaben the Vice President position. Due to this promise the Plaintiff did not voluntarily separate and lost the benefit package he could have received.

28. That shortly on March 14, 2019 (twenty-five minutes) before the VSP deadline for the voluntary separation package would elapse the Plaintiff received text messages from his Director/Supervisor telling him that his job was being eliminated as part of the downsizing the company was going through and he needed to find another job (Federal ERISA violation).

29. From March 15 to June 28, 2019 Defendant in emails informed Plaintiff that there had been any plans finalized and nothing has been decided in contradiction to item 28 above.

30.      From the early part of 2019 until October of 2019 Plaintiff continued to apply for open positions throughout the company. Plaintiff was overly qualified for many of these positions and less qualified Caucasians were hired to fill them.  At this time the Plaintiff had been working for the Defendant for almost 29 years and was one of the first Black Belt Candidate within Global Nissan.

31. Plaintiff asserts that these deceptive promises where motivated by racial and ethnic bias to minimize the employment benefits Plaintiff would have received through the timely voluntary separation option.

32. In July, 2019, Plaintiff informed that management had deceptively blocked Plaintiff's VSP election and other acts of race discrimination, intimidation and fraud.

33. As a result of his complaint on July 29, 2019 Plaintiff requested HR Director and certain VP's to hire an independent outside investigator to document the facts surrounding his complaints of employment discrimination and fraud.

34. The Defendant's internal investigation of the Plaintiff's complaints of race discrimination, intimidation and warranty fraud was never completed.

35. The Director position Plaintiff was supposed to have received then was given to the friend/family of the management. This was in contradiction to the 2018 Confidential Organization flow charts showing that the Plaintiff was to be the next Director. This left the Plaintiff without a senior management position, Plaintiff was then told and he was not even being considered for any other position within in the company.

36. In September 30, 2019, the Plaintiff was at work in his office, when HR Manager Robert Charlton came into his office and told him that there were armed security outside and he was been given time off and then was escorted off of the property without even being able to retrieve his belongings. This placed the Plaintiff in a position where he immediately went from a high paying position to zero income and having been being publicly humiliated by being physically escorted off of the property by armed security. The Plaintiff was distraught, depressed and had no way to feed his family.

37.     At the time the Plaintiff was terminated he was making $156,000.00 per year. The Plaintiff had no money and he had to pull his pension to be able to survive. Because of this it reduced his pension that he was to receive as retirement from approximately $5500.00 per month to $1,200.00 per month.

38.     In less than a month after his termination the Defendant gave the Plaintiff the option for a very low payout (not even in accord with the VSP plan). The Plaintiff was desperate and under extreme duress. He had lost his employment. He had a family to care for and had been retaliated against by his employer for protesting employment discrimination and trying to protect the consumers & Nissan. In an act of desperation, the Plaintiff signed the payout. Additionally, everything that the Plaintiff needed to prove his claims against the Defendant had been left in his office when he was escorted out of the building by armed guards.

39. Soon after Plaintiff was terminated and during the next six months after he had been forced under duress to sign the separation agreement, Nissan delivered all of his personal belongings and documents from his office via FedEx boxes and unmarked cardboard boxes. This included all of the files showing the promises of his positions with the company. This included all of the files showing the text messages related to his position and it included all of the information necessary to demonstrate the fraud that the company was engaging in and was directed to the consumers. Mentally the Plaintiff was not in a State to pursue a lawsuit at that point due to the extreme emotional distress caused by the Defendant.

40.     Plaintiff felt the need due to his own personal safety and his family's safety to relocate far away out of the State of Tennessee. He was able to do this and secured new

employment in Montana. That the employment in Montana was not commensurate with what he would have made as a Vice President in Nissan. Upon information and belief, a Vice President at Nissan would be making between $400,000.00 and $1,000,000.00 per year plus stock options and bonuses.

41.     After the termination the Plaintiff contacted the EEOC who opened an investigation. However, in March of 2020 the entire country shut down due to (COVID-19). This basically put a stop to the EEOC investigation. The Plaintiff followed up with the EEOC it eventually issued a standard right to sue letter without any basis and without any follow up. This right to sue letter was mailed incorrectly to a random address without notifying the Plaintiff. After a several months and constant enquire the EEOC reissued a new Right to Sue Letter related to the racial discrimination.

42.     After having finally received new employment in an attempt to mitigate any damages and to provide for his family and after having received all of his possessions and files, Plaintiff was able to start to feel mentally able to look back at the past and begin the process of healing enough emotionally and mentally to understand that what Nissan had done was underhanded, dirty, emotionally destructive, racially charged and a breach of the agreements that he had with the Defendant.


## STATEMENT OF LEGAL AUTHORITIES


• Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.

• 42 U.S.C. §§ 1981 and 1981A.

• ERISA § 510, 29 U.S.C. § 1140.

• Sarbanes-Oxley whistle-blower retaliation, 18 U.S.C. § 1514A.

• Fraudulent information returns, 26 U.S.C. §§ 6051 & 7434.

• Truth-in-Mileage Act, 49 U.S.C. § 32710, and predicate mail/wire fraud, 18 U.S.C.
§§ 1341 & 1343.

• Tennessee common-law breach of contract and intentional infliction of emotional
distress.

• Declaratory Judgment under 28 U.S.C. §§ 2201-2202.


## CAUSE OF ACTION:

## COUNT I – BREACH OF CONTRACT

43. The allegations set forth in paragraphs one (1) through (42) are hereby realleged and
incorporated by reference herein.


44. Defendant made numerous promises to the Plaintiff related to moving into senior
management positions. These promises were offers to the Plaintiff and they were done in
an attempt to ensure that the Plaintiff would forgo other options which he did. These
promises and the forbearance of the other benefits created a binding contract between the
parties whereby the Plaintiff should be in the position of a Senior Vice President with
Nissan where it is estimated that he would have been able to work for at least fifteen (15)
years before retirement. The estimated pay that the Plaintiff would have received above

and beyond what he receives in his employment now over the ten (15) year period is between $12,000,000.00 and $15,000,000.

45. Due to the actions of Defendant in breaching the contract with Plaintiff, he has lost significant pension benefits. It is estimated that at the time of retirement with the increase in pay Plaintiff would be receiving approximately $20,000.00 per month in pension benefits. Instead, the Plaintiff is receiving $1,200.00 per month.

46. Defendant actions in terminating Plaintiff's employment and forgoing the promotion to Vice President were in breach of the contract with Plaintiff.

47. Thus, Defendant Nissan's actions has caused damage to Plaintiff in the termination of his employment in an amount sufficient to confer jurisdiction on this Court and be proven at trial.

COUNT II – Employment Discrimination (42 U.S.C. § 1981A)

48. The allegations set forth in paragraphs one (1) through (47) are hereby realleged and incorporated by reference herein.

49. Claim for Relief Under 42 U.S.C. §§ 1981, 1981A – Disparate Treatment and Damages.

Plaintiff asserts claims for intentional employment discrimination under 42 U.S.C. § 1981A, which provides in pertinent part:

> **(a) Right of Recovery**
>
> (1) Disparate treatment — In cases of intentional employment discrimination based on race, color, religion, sex, or national origin (as prohibited under **42 U.S.C. §§ 2000e–2 or 2000e–3**), a complaining party may recover

compensatory and punitive damages, as allowed under this section.

**(b) Compensatory and Punitive Damages**

Pursuant to subsection (b), the statute authorizes:

- **Compensatory damages** for:
  o Future pecuniary losses;
  o Emotional pain;
  o Suffering;
  o Inconvenience;
  o Mental anguish;
  o Loss of enjoyment of life; and
  o Other nonpecuniary losses.
- **Punitive damages** in cases where the employer acted with:
  o Malice; or
  o Reckless indifference to the federally protected rights of an aggrieved individual.

50. Plaintiff alleges that the Defendant's actions constitute intentional discrimination on the basis of race and national origin, satisfying the requirements of **42 U.S.C. § 1981A(a)(1)** and entitling Plaintiff to the remedies listed in **§ 1981A(b)**.

51. Plaintiff, an Asian-Indian, was well qualified for promotions and continued employment with Nissan.

52. Defendant denied promised promotions, reassigned Plaintiff to a lesser Warranty Call Center (WCC) role in 2014, was promoted to Senior Manager in 2016 for both the warranty call center (WCC) and Power Train Call Center (PCC) and then wrongfully terminated him in 2019.

53. Non-Indian comparators were not subjected to such adverse actions by Defendant and there were no legitimate business reasons for these adverse actions taken against the Plaintiff.

54. Defendant's conduct was motivated by discriminatory animus base on his race and ethnicity.

COUNT III – Hostile Work Environment (42 U.S.C. § 1981A)

55. The allegations set forth in paragraphs one (1) through (54) are hereby realleged and incorporated by reference herein.

56. Summer of 2016: Plaintiff was shown death-threat videos of aftersales management firing AR-style rifles with comments 'a bullet has your name.' during working hours in Plaintiff's office by Brad Page, Power Train Call Center (PCC) manager. Plaintiff reported the threats to Warren Debardelaben, his supervisor, but no action was taken.

57. From time-to-time Plaintiff endured racial remarks from his supervisor, David Bishop (e.g., "rickshaw puller") and pressure to shortcut and or to bypass certain product-approval tests.

58. September 30, 2019, at 5:24 a.m. plaintiff sent an email to his supervisor reiterating his complaint his various managerial positions at Nissan had been "eliminated" causing his transfer only to have these same positions subsequently filled by Caucasian managers. He also questioned the status of internal investigation of his employment discrimination claims.

59. At 11:04 a.m. that day HR Manager Robert Charlton barged into Plaintiff office without appointment and told Plaintiff that there are armed guards outside and told the Plaintiff that he has been given a day off and then physically escorted him while the

guards in civilian clothes followed the Plaintiff and Manager Charlton off the property. Plaintiff was not allowed to take his personal belongings including his work phone and work computer and also his badge was also confiscated. Plaintiff was also warned by the HR Manager Robert Charlton not to talk to any other employee and not return to any Nissan properties. On October 1, 2019 Plaintiff's job was officially terminated.

60. Plaintiff asserts that the way he was treated and the way his employment was terminated, constituted a hostile work environment and retaliation based on Plaintiff's complaints of employment discrimination, based upon his race and ethnicity and fraudulent business practices, which constituted a breach of contract in violation of 42 U.S.C §§ 1981 and 1981A.

COUNT IV – DECLATORY JUDGEMENT INVALIDATING "VOLUNTARY" SEPERATION AGREEMENT

61. The allegations set forth in paragraphs one (1) through (60) are hereby realleged and incorporated by reference herein.

62. The Voluntary Separation Agreement provides in pertinent part:

> 6. Release of all claims. ...YOU ALSO SPECIFICALLY AGREE AND ACKNOWLEDGE YOU ARE WAIVING ANY RIGHT TO RECOVERY BASED ON ANY AND ALL COMMON LAW CLAIMS, INCLUDING CLAIMS FOR WRONGFUL TERMINATION, BREACH OF CONTRACT AND ANY TORTS ALONG WITH ANY STATE OR FEDERAL STATUTORY CLAIMS BASED ON ANY PROTECTED CLASS, INCLUDING BUT NOT LIMITED TO AGE, SEX, RACE, COLOR, NATIONAL ORIGIN, MARITAL STATUS, RELIGION, VETERAN STATUS, DISABILITY, REASONABLE ACCOMMODATION, FAILURE TO ENGAGE IN THE INTERACTIVE PROCESS, FAILURE TO ACCOMMODATE, OR OTHER ANTI-DISCRIMINATION LAWS, INCLUDING, WITHOUT LIMITATION, TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, THE EQUAL PAY

ACT, THE AMERICANS WITH DISABILITIES ACT, THE
GENETIC INFORMATION NONDISCRIMINATION ACT,
THE AGE DISCRIMINATION IN EMPLOYMENT ACT, THE
FAMILY AND MEDICAL LEAVE ACT, THE EMPLOYEE
RETIREMENT INCOME SECURITY ACT, THE WORKER
ADJUSTMENT RETRAINING AND NOTIFICATION ACT,
AND THE TENNESSEE HUMAN RIGHTS ACT.

….

11. Confidentiality - You agree that the terms of this
Agreement are strictly confidential. You shall not
communicate, display, publish, or otherwise disclose any of
the contents of this Agreement to any other individual,
group of individuals, or organization other than your
spouse and your attorney(s) and/or accountant(s), or as
required by compulsory legal process. You agree that you
will advise your spouse of this confidentiality requirement
and that your spouse is also bound by this requirement. If
you receive a subpoena or lawful discovery request that
would require the disclosure of this Agreement, you agree
to notify Nissan's Legal Department within 48 hours of
being served with the subpoena or discovery request by
calling Susan Gritton at (615) 725-3022.

63. Legal Standards for Waiver of Civil Rights

* Federal courts require that waivers of civil rights claims be: a. Knowing and
voluntary b. Not contrary to public policy c. Free from duress, fraud, or coercion

* See Alexander v. Gardner-Denver Co., 415 U.S. 36 (1974): An employee
cannot waive the right to pursue a Title VII claim unless the waiver is explicit,
knowing, and voluntary.

* In EEOC v. Board of Governors of State Colleges & Universities, 957 F.2d
424 (7th Cir. 1992), it was held that employees cannot prospectively waive their
right to file a discrimination charge with the EEOC.

64. Economic Duress and Coercion

  * Plaintiff was under considerable duress when signing the separation
  agreement. He was threatened with humiliation, escorted out of the building by
  armed guards, and given no meaningful time or ability to negotiate the terms.

  * Plaintiff was misled into believing he would receive a higher executive role if
  he did not take the voluntary separation plan (VSP), only to be forcibly
  terminated.

65. Concealment and Fraudulent Inducement

  * Defendant concealed illegal warranty practices, safety violations, and black
  mold exposure.

  * After Plaintiff was terminated, he was surprised to receive evidence of these
  violations among personal belongings shipped by Defendant.

  * Plaintiff could not have knowingly waived claims based on facts that were
  deliberately hidden by the employer.

66. Public Policy Considerations

  * Courts have found that waivers cannot be enforced when doing so would
  contravene public policy aimed at preventing discrimination and retaliation in
  the workplace.

  * See Barrentine v. Arkansas-Best Freight Sys., Inc., 450 U.S. 728 (1981).

67. The Agreement purports to waive Plaintiff's rights to bring claims under various federal and state statutes, including but not limited to Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act ("ADEA"), the Americans with Disabilities Act ("ADA"), the Family and Medical Leave Act ("FMLA"), the Equal Pay Act, ERISA, 42 U.S.C. § 1981, 42 U.S.C. § 1981a, and various state law equivalents. The agreement does not specifically mention claims under 42 U.S.C. § 1981 and 42 U.S.C. § 1981A. Expressio unius exclusio alterius (to declare one is to exclude the other).

68. The Agreement further contains a confidentiality clause and provisions that purport to prohibit Plaintiff from disclosing its contents or discussing any potential wrongdoing by Defendant Nissan.

69. Plaintiff signed the Agreement under conditions of duress, coercion, and misrepresentation, including but not limited to being escorted by armed personnel, denial of access to personal property, being threatened with retaliation, and being misled into believing he would be reassigned rather than terminated.

70. Plaintiff has since discovered that Defendant Nissan inadvertently shipped boxes containing confidential company documents, which establish that Plaintiff was terminated in retaliation for whistleblower complaints regarding illegal warranty denials, hazardous working conditions, and fraudulent business practices.

71. Such conduct by Defendant is illegal, retaliatory, and violates federal statutes including 42 U.S.C. § 1981 and § 1981a, and public policy protections afforded to whistleblowers and employees who report health, safety, or legal violations.

72. 42 U.S.C. § 1981A prohibits the waiver of rights arising under federal anti-discrimination statutes where intentional discrimination or retaliation is shown. Waivers of civil rights, especially when secured through coercion or concealment of material facts, are void as against public policy. See Alexander v. Gardner-Denver Co., 415 U.S. 36 (1974).

73. The Agreement's confidentiality clause also attempts to chill lawful whistleblower activity and contravenes Plaintiff's rights to report violations to regulatory authorities.

74. Therefore Plaintiff seeks a declaration from this Court that:

a. The waiver and release provisions of the Agreement are null and void;

b. The confidentiality provisions are unenforceable to the extent they restrict lawful reporting or disclosures under federal law;

c. Plaintiff retains all statutory rights and remedies under federal and state law; and

d. Defendant may not rely on the Agreement to bar this civil action or prevent Plaintiff from seeking relief in this Court.

## COUNT – V

### EVIDENCE OF POST EMPLOYMENT HARASSMENT BECAUSE OF RACE AND ETHINICITY/BREACH OF EMPLOYMENT CONTRACT

75. The allegations set forth in paragraphs one (1) through (74) are hereby realleged and incorporated by reference herein.

76. Plaintiff and Defendant entered into an employment contract which Nissan breached by false promises and deceptive while plotting to terminate his employment based upon his racial ethnicity on October 1, 2019, while falsely continuing to claim him as an

employee by sending W2 forms to the IRS for years 2020,2022,2023 an 2024 requiring him to pay additional taxes on money he had never been paid or blank W2's with random entries.

77. Defendant knowingly issued false Forms W-2's for 2020-2024 reporting wages not paid or blank W2's with random entries.

78. Plaintiff incurred IRS liabilities which has had an adverse effect on his credit rating.

79. Defendant's continued misconduct after the Separation Agreement (e.g., phantom W-2s, POA concealment, post-termination threats) proves that Plaintiff could not have knowingly waived all claims, and also serves to Toll any Statute of Limitations under 42 U.S.C. § 1988.

## COUNT VI

### Retaliation/Whistleblowing (18 U.S.C. § 1514A; 18 U.S.C. § 1513)

80. The allegations set forth in paragraphs one (1) through (79) are hereby realleged and incorporated by reference herein.

81. Plaintiff engaged in protected activity by reporting warranty fraud, black-mold hazards, and discrimination to upper management.

82. Defendant knew of these Plaintiff reports.

83. Because of Plaintiff's report Nissan not only blocked Plaintiff's promotions to Director/VP level in management, but also had him escorted off property by armed security guards during Termination, blocked transfers and promotions, and the armed

escort occurred in temporal proximity (less than 60 days), constituting unlawful retaliation for being engaged in protective activity.

## COUNT VII

### EMOTIONAL DISTRESS

84. The allegations set forth in paragraphs one (1) through (83) are hereby realleged and incorporated by reference herein.

85. Armed escort with being physically removed from the office at Nissan, death-threat imagery, and public humiliation are outrageous and constitute a breach of contract of the implied covenant of good faith in Plaintiff's employment contract.

86. As a proximate result of this breach of contract, Plaintiff suffered severe emotional distress. He could not sleep. He was depressed, Plaintiff had to seek medical care for this condition.

87. Emotional distress damages can be awarded in breach of contract cases.

## COUNT VIII

### EVIDENCE OF FURTHER POST TERMINATION HARRASSMENT

### BREACH OF SALES CONTRACT

### TRUTH-IN-MILEAGE/MAIL-WIRE-FRAUD HARASSMENT (49 U.S.C. § 32710; 18 U.S.C. §§ 1341, 1343)

88. The allegations set forth in paragraphs one (1) through (87) are hereby realleged and incorporated by reference herein.

89. Defendant's Dec 2024 POA request sought to conceal odometer tampering (mail/wire transmissions) on a vehicle that Plaintiff had sold to Defendant Nissan in 2013 for road

testing rebuilt parts. This vehicle, unknown to Plaintiff, remained Titled in Plaintiff's name for more than 11 years, exposing Plaintiff to claims of odometer fraud when the vehicle was resold by Defendant Nissan.

90. Such conduct violates the Truth-in-Mileage Act and constitutes predicate mail/wire fraud.

## COUNT IX

## EQUITABLE TOLLING DUE TO FRAUDULENT CONCEALMENT AND ONGOING INJURY

91. The allegations set forth in paragraphs one (1) through (90) are hereby realleged and incorporated by reference herein.

92. Defendant engaged in fraudulent concealment and continuing misconduct by:

- Issuing false W-2s from 2020 to 2024 for income not received;
- Requesting Plaintiff to sign a fraudulent Power of Attorney for a vehicle used in undisclosed durability testing and odometer manipulation;
- Concealing these actions while continuing reputational harm and withholding owed benefits.

93. Plaintiff reasonably discovered the full extent of the fraud only after receiving misdelivered internal documents and repeated IRS reporting through 2020–2024.

95. These facts warrant equitable tolling under:

- *Holmberg v. Armbrecht*, 327 U.S. 392 (1946);
- *Truitt v. County of Wayne*, 148 F.3d 644 (6th Cir. 1998);

- *Evans v. Pearson Enters.*, 434 F.3d 839 (6th Cir. 2006);
- Tenn. Code Ann. §§ 28-3-105, 28-1-106.

96. As Defendant actively concealed material facts and Plaintiff acted diligently once discovered, all limitations periods must be tolled.

## PRAYER FOR RELIEF

Wherefore, premises considered, Plaintiff's prays for:

1. Declaratory judgment that Defendant violated every statute and duty stated herein;

2. Rescission of the coerced separation agreement and related NDA as void against public policy;

3. Reinstatement into comparable management position with seniority or, alternatively, front pay through expected retirement age;

4. Back pay, compensatory, and punitive damages under 42 U.S.C. § 1981A and 1988 and contract damages equal to unpaid director-level compensation;

5. Statutory damages of at least $5,000 for each false tax information return in violation of 26 U.S.C. § 7434;

6. Equitable relief under ERISA § 502(a)(3) restoring full pension, health, and welfare benefits;

7. Injunction directing Defendant to correct all false IRS filings and cease retaliation;

8. Pre- and post-judgment interest, costs, and attorney fees allowed by 42 U.S.C. § 1988; and

9. Any further relief the Court deems just and proper.

DATED: 17 July 2025

Respectfully submitted,

Signature : _____

Srinivas Anday, pro se

355 Delta Circle

Billings, MT 59102

(615) 482-4106

Srinuanday1@yahoo.com

LOCAL RULE 7.01(e) STATEMENT

Plaintiff will confer with Defendant's counsel in good faith on all non-dispositive matters.

Foot Note: RESERVATION OF RIGHTS & SPOLIATION NOTICE

1. Rejection of Premature Estoppel Defenses. Plaintiff reserves the right to object to any invocation of judicial, equitable, or promissory estoppel as premature, fact-intensive, and improper at the pleading stage. Such defenses require factual development through discovery and cannot be resolved under Rule 12(b)(6).

2. Public Policy Exception. Where Plaintiff's claims involve significant public interest, such as product safety (e.g., illegal CVT warranty denials, black mold exposure), estoppel doctrines cannot override the right to redress under federal law.

(Fed. R. Civ. P. 15, 26(e), 37(e); Sixth-Circuit authority)

3. **Limited Access to Defendant's Records. ** Plaintiff presently lacks access to Nissan's internal e-mail servers, document-management systems, and other electronically stored information ("ESI"). Accordingly, and pursuant to Fed. R. Civ. P. 11(b) and 26(e), certain dates, times, and quantities are pleaded herein **upon information and belief**. Plaintiff will amend or supplement these allegations promptly after Nissan produces responsive records in discovery.

4. **Duty to Preserve ESI Triggered No Later Than July 2019.** By July 2019—and certainly by Plaintiff's 5:30 a.m. e-mail of September 30, 2019 outlining ERISA interference and product-safety violations—Nissan knew, or reasonably should have known, that litigation was foreseeable. From that moment forward, Nissan was obligated to suspend any routine deletion or "cleansing" practices affecting potentially relevant data. See *Beaven v. U.S. Dep't of Justice*, 622 F.3d 540, 553-54 (6th Cir. 2010); *Adkins v. Wolever*, 554 F.3d 650, 651-53 (6th Cir. 2009) (en banc).

5. **Nissan's 90-Day Auto-Deletion Policy.** Plaintiff is informed and believes—and expects discovery to confirm—that Nissan operates a **"90-day e-mail cleansing rule"** under which unarchived e-mails are automatically purged. If Nissan continued, or failed to suspend, that policy after its preservation duty arose, such conduct constitutes at least **gross negligence** and may rise to **willful spoliation**.

6. **Adverse-Inference & Rule 37(e) Remedies Reserved.** Should discovery reveal that relevant ESI has been lost, overwritten, or is otherwise unavailable because Nissan failed to preserve it, Plaintiff will seek all appropriate sanctions under Fed. R. Civ. P. 37(e), including but not limited to:

   (a) an **adverse-inference instruction** that the missing communications would have corroborated Plaintiff's claims;

   (b) preclusion of Nissan evidence contradicting Plaintiff's account; and

   (c) monetary, issue, or terminating sanctions as the Court deems just. See *Holloway v. United States*, 799 F. App'x 347, 354-55 (6th Cir. 2020) (affirming ESI sanctions).

7. **Right to Amend.** Plaintiff expressly **reserves the right to amend this Complaint** under Fed. R. Civ. P. 15(a)(2)—including to add parties, claims, dates, or facts that emerge in discovery, or to assert a standalone Tennessee common-law spoliation count should the evidentiary record warrant.

Signature: 

Srinivas Anday

Plaintiff, Pro Se.

355 Delta Circle

Billings, Montana – 59102

USA.